CAMILLE JOANNE ROSCA
crosca@orrick.com
ORRICK, HERRINGTON &
SUTCLIFFE LLP
51 West 52nd Street
New York, NY  10019-6142
Telephone:  +1 212 506 5000

Attorneys for Defendant
TWILIO INC.

UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, an assignee of individuals who are Covered Persons, JANE DOE-1, a law enforcement officer, JANE DOE-2, a law enforcement officer, EDWIN MALDONADO, SCOTT MALONEY, JUSTYNA MALONEY, and PETER ANDREYEV,<br><br>    Plaintiffs,<br><br>    v.<br><br>TWILIO INC., RICHARD ROES 1-10, fictitious names of unknown individuals and, ABC COMPANIES 1-10, fictitious names of unknown entities,<br><br>    Defendants. | Case No.<br><br>**NOTICE OF REMOVAL** |

TO:         THE CLERK OF THE COURT

AND TO:   PLAINTIFFS THROUGH THEIR COUNSEL OF RECORD

**PLEASE TAKE NOTICE** that Defendant Twilio Inc. ("Twilio"), by and through its undersigned counsel hereby removes to this Court pursuant to 28 U.S.C. §§ 1332(d), 1441, and 1446, as amended in relevant part by the Class Action Fairness Act of 2005 ("CAFA"), the above captioned action, which was originally filed in the Superior Court of New Jersey Law Division, Morris County and assigned Case No. MRS-L-000226-24.

In support of its Notice of Removal, Twilio states as follows:

## LOCAL CIVIL RULE 10.1 STATEMENT

1. Plaintiff Atlas Data Privacy Corporation is not a natural person, and its principal place of business is listed in the Complaint as 201 Montgomery Street, Suite 263, Jersey City, New Jersey 07302.

2. Twilio is unaware of the street and post office address of any of the other named Plaintiffs to this action. Contrary to the allegations in the Complaint, Twilio does not have any way to determine the addresses of individuals based on their names. The addresses of Plaintiffs' counsel are listed in the Complaint as 494 Broad Street, Newark, New Jersey 07102; and 201 North Franklin Street, 7th Floor, Tampa, Florida 33602.

3. Twilio is not a natural person, and its principal place of business is Twilio, 101 Spear Street, First Floor, San Francisco, CA 94105.

## BACKGROUND

4. On or about February 6, 2024, Plaintiffs filed a complaint in Morris County Superior Court entitled *Atlas Data Privacy Corporation, as assignee of individuals who are Covered Persons, Jane Doe-1, a law enforcement officer, Jane Doe-2, a law enforcement officer, Edwin Maldonado, Scott Maloney, Justyna Maloney, and Peter Andreyev v. Twilio Inc., Richard Roes 1-10, fictitious names of unknown individuals and ABC Companies 1-10, fictitious names of unknown entities*. The complaint was served on Twilio on February 22, 2024.

5. The only cause of action alleged in the complaint is for alleged violation of Daniel's Law, N.J.S.A. 56:8-166.1.

6. Pursuant to 28 U.S.C. § 1446(d), copies of this Notice of Removal are being served upon counsel for Plaintiffs and filed with the Clerk of the Superior Court of New Jersey Law Division, Morris County, as an exhibit to a Notice of Filing of Notice of Removal.

7. Copies of the state court docket, as well as all filings on that docket, are attached here as Exhibits A-E.

8. Twilio is the only non-fictitious defendant in this action, though the complaint also names "Richard Roes 1-10" and "ABC Companies 1-10," whom it describes as "fictitious."

## JURISDICTION

9. This action is removable pursuant to 28 U.S.C. § 1441, which permits removal of "any civil action brought in a State court of which the district courts of the United States have original jurisdiction," and the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), which grants U.S. District Courts original jurisdiction over, and permits removal of, class actions in which: (i) any member of a class of plaintiffs is a citizen of a State different from any defendant ("minimal diversity"); (ii) the defendant is not a governmental entity; (iii) the proposed class contains at least 100 members; and (iv) the matter in controversy exceeds $5,000,000, exclusive of interests and costs.

10. "[N]o antiremoval presumption attends cases invoking CAFA … in part because the statute was enacted to facilitate adjudication of certain class actions in federal court."  *Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 992–93 (9th Cir. 2022).  As set forth below, this case meets all the requirements for jurisdiction under CAFA.

**Minimal Diversity of Citizenship**

11. At least one plaintiff is a citizen of a different state than any defendant.

12. Plaintiffs Scott Maloney and Justyna Maloney both claim to be residents, and hence citizens, of New Jersey.

13. Twilio is a Delaware corporation with its principal place of business in California.

14. Accordingly, there is minimal diversity of the parties under CAFA. 28 U.S.C. § 1332(d)(2).

**Twilio Is Not A Governmental Entity**

15. Twilio is the primary defendant in this action, and is not a State, State official, or other governmental entity.

16. The Complaint does not allege or otherwise suggest that any of the fictitious defendants are government entities. And in any event, the fictitious defendants are not primary defendants in this action.

**Proposed Class Exceeds 100 Members**

17. The Complaint purports to vindicate the "claims of approximately 16,515 individuals who are all 'covered persons' under Daniel's Law." Accordingly, the proposed class is greater than 100 members. *See* 28 U.S.C. § 1332(d)(5)(B).

18. That Plaintiff Atlas Data Privacy Corporation ("Atlas") alleges that these 16,515 individuals have assigned their claims to it is immaterial. "[F]ederal district courts have both the authority and the responsibility … to disregard [a]

4

assignment in determining jurisdiction if it be found to have been made principally to defeat removal." *Grassi v. Ciba-Geigy, Ltd.*, 894 F.2d 181, 185 (5th Cir. 1990). That is precisely the case here.

19.  This suit is brought under New Jersey's Daniel's Law, a recently enacted statute that allows certain "covered individuals" (most notably, law enforcement) to request that businesses refrain from making certain disclosures of their home addresses and telephone numbers online. Any business that receives such a request must comply within 10 business days or face a penalty of $1,000 per violation.

20.  Prior to July 2023, Daniel's Law did not permit individuals with claims arising under that law to assign them to others. Accordingly, before that time there would have been no question that if 16,515 individuals here all sought to vindicate their claims in a single lawsuit, this Court would have had jurisdiction under CAFA. *See* 28 U.S.C. § 1332(d) (minimal diversity, defendant not a governmental entity, at least 100 class members; and amount in controversy over $5,000,000).

21.  In July 2023, however, Daniel's Law was amended without explanation to now permit individuals to assign their claims. Atlas quickly pounced. It recruited tens of thousands of covered persons to register with Atlas online; selected hundreds of websites and businesses for those persons to notify under Daniel's Law; apparently had those covered persons assign their claims to Atlas; sent millions of

5

automated requests all at once on behalf of those covered persons (Twilio itself appears to have received approximately 15,000 such requests), with the aim of overwhelming the recipients and making it practically impossible for them to process the requests in time; and filed hundreds of suits—all similar to this one—seeking tens of millions of dollars in statutory damages.

22. This was no mere fortuity. To the contrary, the July 2023 amendment came at a time when Genova Burns—the same counsel representing Atlas in this litigation—was serving as an active lobbyist on Atlas's behalf. *See* https://www.elec.nj.gov/pdffiles/Lobby2023/l2l.pdf. Nor is it an accident that Atlas is incorporated in Delaware—where so many of the hundreds of defendants that Atlas sued are also incorporated. Atlas is not some well-established corporation that has long been incorporated in Delaware simply because it was the thing to do. Rather, Atlas came into existence—and incorporated in Delaware, just like so many of its future targets—only just after Daniel's Law was passed in 2021. In other words, it has likely been the design of Atlas all along—or at least Atlas's counsel—to engineer and lobby the New Jersey legislature for exactly this kind of assignment mechanism, which frustrates federal court jurisdiction under CAFA.

23. Removal under CAFA would plainly be permissible and proper but for the fact that the 16,515 individuals whose claims are at issue here have assigned their claims to Atlas. The mere formality of that assignment should not be allowed to

avoid federal jurisdiction—especially when it was likely engineered cynically from the start by Atlas for exactly that purpose.

24. What is more, it is well-established that where a person assigns away only part of his claim, he continues to be a "real part[y] in interest" to any litigation brought to vindicate that claim. *Grassi*, 894 F.2d at 185 ("the assignor who makes a fractional assignment remains a party to the action"). That is exactly the case here. Atlas purports to seek injunctive relief requiring Twilio to take action with respect to each of those 16,515 individuals' information. But it is only those individuals (not Atlas) who have an interest in that relief, since only their information (not Atlas's) is at issue. Because the 16,515 individuals thus continue to retain an interest in the claims that they supposedly assigned away, that assignment can be at most partial, and thus must be disregarded for purposes of assessing federal jurisdiction.

25. At bottom, it is apparent that the assignment here is an unnecessary contrivance, with little benefit to the 16,515 individuals—other than to evade federal jurisdiction. Indeed, there is no advantage to the 16,515 individuals assigning their claims to Atlas as opposed to participating as passive class members in a Rule 23 class action driven by Atlas (in fact, they may be financially disadvantaged by the assignment). Yes, both are representative actions in that the individuals' claims will be advanced by parties other than those individuals, and by counsel that those individuals did not hire and over which they have no control. But those individuals

7

are likely worse off under the assignments alleged here, rather than in a Rule 23 class action. Unlike with a Rule 23 class action, there is far less court supervision over the adequacy of that representation and no supervision at all over any potential settlement of their claims. Given that the 16,515 individuals at issue here have given up significant procedural protections, while apparently gaining nothing in return, there are strong indications that the assignment was effected in order to defeat removal.

**Amount In Controversy**

26. Twilio denies the validity and merit of Plaintiffs' claims. Nevertheless, for purposes of setting forth grounds for this Court's jurisdiction—and without conceding that Plaintiffs are entitled to damages or any relief whatsoever—it is apparent that the amount in controversy exceeds CAFA's jurisdictional minimum.

27. The Complaint seeks "liquidated damages under Daniel's Law, at '$1,000 for each violation'", as well as punitive damages. Given that it purports to represent the claims of at least 16,515 individuals, the Complaint thus puts an amount in controversy of at least $16,515,000—well above the $5,000,000 amount in controversy requirement.

**This Court Also Has Ordinary Diversity Jurisdiction**

28. CAFA aside, this Court separately has jurisdiction under ordinary diversity jurisdiction because (i) there is complete diversity of citizenship between

8

Twilio and the Individual Plaintiffs; (ii) Atlas's citizenship can and should be disregarded for purposes of diversity jurisdiction; (iii) the amount in controversy exceeds $75,000, exclusive of interests and costs; and (iv) all other requirements for removal have been satisfied.

29. Twilio is a Delaware corporation with its principal place of business in California.

30. Each of the Individual Plaintiffs are current or former New Jersey law enforcement officers, and are alleged to be "liv[ing]" or "working" in New Jersey currently:

    a. Plaintiff JANE DOE-1 is described as a police officer "working in Northern New Jersey.

    b. Plaintiff JANE DOE-2 is described as a correctional police officer who "lives in Northern New Jersey."

    c. Plaintiff Edwin Maldonado is described as a member of the Plainfield, New Jersey police department. *Id.* ¶ 17.

    d. Plaintiffs Scott Maloney and Justyna Malone are described as police officers "currently serving with the Rahway, New Jersey police department." *Id.* ¶ 18.

   e. Plaintiff Patrick Colligan is described as a member of the Franklin Township police department in Somerset, New Jersey. *Id.* ¶ 22.

   f. Plaintiff Peter Andreyev is described as a veteran of the Point Pleasant, New Jersey police department, and current Executive Vice President of the New Jersey State Policemen's Benevolent Association. *Id.* ¶ 23.

 31. Further, under New Jersey law, "[e]very member of a police department and force shall be a resident of the State of New Jersey while serving in such position." N.J.S.A. 40A:14-122.8.

 32. Accordingly, by all appearances, each of the Individual Plaintiffs are citizens of New Jersey.

 33. For the reasons explained above, upon information and belief, the alleged assignment of approximately 16,515 individuals' claims to Atlas was done as part of a collusive effort to avoid federal jurisdiction. Therefore, the citizenship of Atlas should be disregarded for purposes of determining diversity.

 34. "A plaintiff may attempt to create or destroy diversity jurisdiction by making a transfer which is an assignment in name only. In either case, the plaintiff tampers with the jurisdiction of the court by artificially affecting it." *Attorneys Trust v. Videotape Computer Products, Inc.*, 93 F.3d 592, 595 (9th Cir. 1996).

Though a federal statute, 28 U.S.C. § 1359, applies to collusive attempts to create diversity jurisdiction in this way, these "informing principles are much the same" when a plaintiff attempts to destroy diversity through a collusive assignment. *Attorneys Trust*, 93 F.3d at 595. "Because of their similarity, assignments which destroy diversity and assignments which create diversity should be analyzed under the same standard; that is, the issue of whether the assignment was improperly or collusively made is to be resolved as a simple question of fact." *Grassi*, 894 F.2d at 186; *accord, Attorneys Trust*, 93 F.3d at 598 ("[T]here is no more reason for federal courts to countenance destruction of jurisdiction by the use of straw parties than there is for them to countenance the creation of jurisdiction in that manner …. In either event, another party is deprived of a forum to which he would otherwise be entitled, and the jurisdiction which Congress conferred upon the federal courts is manipulated.").

35. In assessing whether an assignee's citizenship should be disregarded for purposes of diversity, courts are permitted to "look beyond the four corners of a complaint" and independently consider the "factual predicates . . . for [the court's] subject matter jurisdiction." *Erie Insurance Exchange*, 68 F.4th at 820; *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016).

36. Here, Atlas's presence as a party in this action appears calculated for the purpose of defeating federal jurisdiction—bringing what is effectively a class

action on behalf of approximately 16,515 New Jersey citizens through a collusive assignment to a Delaware corporation, in doing so preventing removal of the action by another Delaware corporation. There is no other plausible reason to structure the claims—and the litigation as a whole—in such a convoluted manner. In such circumstances, the Court should disregard the citizenship of Atlas in determining whether complete diversity exists.

**The Amount In Controversy Exceeds $75,000**

37. The amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

38. The Complaint seeks statutory damages of $1,000 for "each violation" of Daniel's Law. The Complaint does not specify the number of "violations" claimed, but appears to allege multiple violations for each of the Individual Plaintiffs. Were this theory accepted, the statutory damages alone could cross the $75,000 threshold for each Individual Plaintiff.

39. In addition to statutory damages, each Individual Plaintiff seeks punitive damages. In the Third Circuit, claims for punitive damages that are made in good faith "will generally [alone] satisfy the amount in controversy requirement because it cannot be stated to a legal certainty that the value of the plaintiff's claim is below the statutory minimum." *Huber v. Taylor*, 532 F.3d 237, 244 (3d Cir. 2008); *see also Ifill v. CVS Pharmacy,* 2021 WL 486884, at *2 (D.N.J. Feb. 9, 2021)

(denying motion to remand on grounds that the plaintiff's request for punitive damages satisfied the amount in controversy requirement, because even assuming a single-digit multiplier a plaintiff would only need to recover compensatory damages above $7,500 to bring the total amount above $75,000 and, in any event, "[i]t is possible that a jury could also reasonably award a higher multiplier"); *Valenta v. BI Inc.*, 2021 WL 7185785, at *5 (W.D. Pa. Oct. 8, 2021) ("Because Plaintiff's request for punitive damages is appropriately made, this is generally sufficient to satisfy the amount in controversy."); *Johnson v. State Farm Life Ins. Co.*, 695 F. Supp. 2d 201, 207-08 (W.D. Pa. 2010) (holding that the amount in controversy was satisfied based on plaintiff's request for punitive damages and rejecting the argument that the amount in controversy could not be satisfied because the plaintiff alleged only $10,000 in compensatory damages).

40. Further, as a matter of New Jersey law, any plaintiff seeking punitive damages is entitled to request up to five times the liability found for compensatory damages "*or $350,000, whichever is greater.*" N.J.S.A. 2A:15-4.14b (emphasis added). Thus, by seeking unspecified punitive damages, the Complaint presumptively alleges in excess of the $75,000 jurisdictional amount for each of the Individual Plaintiffs.

41. The Complaint also seeks to recover the costs of suit, including "reasonable attorneys' fees." For the purposes of removal, the Third Circuit has held

13

that in calculating the amount in controversy, courts "must consider potential attorneys' fees" where they are recoverable under a statutory cause of action (as they are here). *Suber v. Chrysler Corp.*, 104 F.3d 578, 585 (3d Cir. 1997); *see also Venuto v. Atlantis Motor Group, LLC*, 2017 WL 4570283, at *3 (D.N.J. Oct. 13, 2017) (noting that "reasonable attorneys' fees must be counted" for "purposes of calculating the amount in controversy" and denying motion to remand where it was "not a legal certainty that plaintiffs cannot recover more than $75,000").

42. Finally, Plaintiffs seek broad injunctive relief. For purposes of evaluating the amount in controversy, injunctive relief is to be valued at the "value of the interest sought to be protected by the equitable relief requested." *Hunter v. Greenwood Trust Co.*, 856 F. Supp. 207, 219 (D.N.J. 1992) (citing *Spock v. David*, 469 F.2d 1047, 1052 (3d Cir. 1972); *In re Corestates Trust Fee Litig.*, 39 F.3d 61, 65 (3d Cir. 1994) ("[i]n injunctive actions, it is settled that the amount in controversy is measured . . . by the value to the plaintiff to conduct his business or personal affairs free from the activity sought to be enjoined"). Here, the interest the Complaint putatively seeks to protect is the interest of the Individual Plaintiffs and the Unidentified Covered Persons in their physical safety and freedom from threatening communications. While Twilio rejects any allegation that it has engaged in conduct that has endangered this interest, the Individual Plaintiffs and Atlas would surely

contend that the value of this interest exceeds $75,000 for each of the Individual Plaintiffs and Unidentified Covered Persons.

## NOTICE OF REMOVAL IS TIMELY

43. This notice of removal is timely filed. Under 28 U.S.C. § 1446(b), "[e]ach defendant shall have 30 days after … service on that defendant of the initial pleading or summons … to file the notice of removal." Here, Twilio was served on February 22, 2024; and it filed this notice of removal on March 22, 2024, less than thirty days after service.

## VENUE FOR REMOVAL

44. Because this action is brought in the Morris County Superior Court, venue for purposes of removal is proper in this Court under 28 U.S.C. § 128(a): this District embraces Morris County, New Jersey, the place where the removed action has been pending. *See* 28 U.S.C. §§ 1441(a) and 1446(a).

## NOTICE OF FILING OF NOTICE OF REMOVAL

In accordance with 28 U.S.C. § 1446(d), Defendant will promptly provide written notice to counsel of record for Plaintiff and will promptly file a copy of this Notice of Removal with the Morris County Superior Court.

## CONCLUSION

WHEREFORE, Defendant Twilio Inc. hereby removes this action to this Court for all future proceedings.

15

Dated: March 22, 2024       By:   */s/ Camille Joanne Rosca*
                                   Camille Joanne Rosca
                                   ORRICK, HERRINGTON &
                                   SUTCLIFFE LLP
                                   Attorneys for Defendant
                                   Twilio Inc.

## CERTIFICATION OF SERVICE

I, Camille Joanne Rosca , hereby certify that on March 22, 2024, I caused the original of the following to be filed via ECF to the Clerk, United States District Court, District of New Jersey, Martin Luther King Building & U.S. Courthouse, 50 Walnut Street, Room 4015, Newark, NJ 07101

(1) Notice of Removal (with exhibits annexed and this Certification of Service),

(2) Civil Cover Sheet, and

(3) Notice of Filing of Notice of Removal

I further certify that copies of the foregoing were served on the following individuals or entities and by the methods listed below:

by eCourts:   Clerk, Superior Court of New Jersey
56 Washington St.
Morristown, NJ 07960
(1 original)

by eCourts, eMail and Regular Mail:

Rajiv D. Parikh
494 Broad Street
Newark, New Jersey 07102
Tel: (973) 533-0777
rparikh@genovaburns.com
(1 original)

Kathleen Barnett Einhorn
494 Broad Street
Newark, New Jersey 07102
Tel: (973) 533-0777
keinhorn@genovaburns.com
(1 original)

1

John A. Yanchunis
201 North Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
jyanchunis@ForThePeople.com
(1 original)

Ryan J. McGee
201 North Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
rmcgee@ForThePeople.com
(1 original)


By: _____/s/ *Camille Joanne Rosca*_____
　　　　　Camille Joanne Rosca

Dated: March 22, 2024